NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-10-0000246
10-OCT-2013
08:31 AM

NO. CAAP-10-0000246

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

In the Matter of the Application of
PASHA HAWAII TRANSPORT LINES LLC
for Issuance of a Certificate of Public
Convenience and Necessity and Approval of
its Local Tariff No. 1 for Service Between and
Among the Ports of Honolulu, Kahului, Hilo and Nawiliwili

APPEAL FROM THE PUBLIC UTILITIES COMMISSION
OF THE STATE OF HAWAI'I
(DOCKET NO. 2009-0059)

MEMORANDUM OPINION
(By: Foley, Presiding Judge, Fujise and Leonard, JJ.)

Intervenor-Appellant Young Brothers, Limited (**Young Brothers**) and Cross-Appellant Division of Consumer Advocacy (**Consumer Advocate**) appeal from the September 20, 2010 Interim Decision and Order (**Interim Decision**) of Appellee State of Hawai'i Public Utilities Commission (**PUC**). In the Interim Decision, the PUC granted Applicant-Appellee Pasha Hawaii Transport Lines LLC's (**Pasha's**) request for a Certificate of Public Convenience and Necessity (**Certificate**) to operate as an intrastate water carrier in Hawai'i, until December 31, 2013. The appellants challenge the Interim Decision on various grounds. In addition, Young Brothers challenges the PUC's denial of its request for certain discovery from Pasha. We affirm.

I.    BACKGROUND

On March 13, 2009, Pasha applied to the PUC for a Certificate to provide intrastate "water transportation services for heavy commercial and military truck/trailer equipment, tracked vehicles, buses, automotive/recreational vehicles, and other general cargoes, excluding passengers and livestock," on a motor-driven vessel called the M/V Jean Anne.  Pasha sought to provide service between and among ports in Honolulu, Kahului, and Hilo, as well as Nawiliwili Harbor on Kaua'i, and Barbers Point, O'ahu, upon inducement.  At that time, Pasha had been transporting vehicles and large pieces of cargo for Hawai'i customers between Hawai'i and the U.S. mainland.

The Consumer Advocate became an *ex officio* party to this case.  Pursuant to a stipulation entered into between Pasha and the Consumer Advocate, the PUC issued a protective order regarding all confidential information identified in the course of the proceedings and in connection with the application.  The Consumer Advocate made recommendations to the PUC regarding Pasha's application for a Certificate in an Initial Statement of Position (**Initial SOP**) and a Supplemental Statement of Position (**Supplemental SOP**).  In its Supplemental SOP, the Consumer Advocate stated that although Pasha was "fit, willing, and able to properly perform" its proposed services, the PUC should deny Pasha's application on the basis that Pasha had "not met its burden of proof in regards to the related public interest and public convenience and necessity issues."  The Consumer Advocate argued that, based on the information that had been submitted, it was unclear whether the proposed service would adversely affect certain customer classes.  The Consumer Advocate recommended that the PUC offer Pasha an opportunity to file a more fully supported application in a subsequent filing.

On April 27, 2009, Young Brothers, a regulated water carrier operating throughout Hawai'i,[1] filed a motion to intervene in the proceedings. The PUC granted the motion on May 28, 2009.

On September 20, 2010, the PUC filed the Interim Decision, concluding, *inter alia*, that:

(1) in accordance with the requirements of Hawaii Revised Statutes (**HRS**) § 271G-10(c),[2] Pasha is "fit, willing, and able to properly perform the proposed service, and is able to conform to HRS Chapter 271G and the requirements and rules of the commission"; and

(2) in accordance with the requirements of HRS § 271G-10(c) and Hawaii Administrative Rules (**HAR**) Rule 6-61-81, Pasha's proposed service "is or will be required by the present or future public convenience and necessity."

On October 4, 2010, Young Brothers filed, *inter alia*, a motion for reconsideration of the Interim Order and a motion to stay the Interim Order. On December 1, 2010, the PUC denied the motion for reconsideration and dismissed the motion to stay as moot. The PUC found that Young Brothers had previously raised

---

[1] At the time the Interim Decision was filed, Young Brothers offered "twelve round-trip sailings from Honolulu each week, with four sailings weekly to Hawai'i (two each to Hilo and Kawaihae), three weekly sailings to Maui, two weekly sailings to Kaua'i, two weekly sailings to Moloka'i, and one weekly sailing to Lana'i."

[2] HRS § 271G-10(c) (2007) provides:

> (c) A certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to this chapter and the requirements, rules, and regulations of the commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise the application shall be denied.

the arguments made in the motion for reconsideration and had not presented any new evidence that would justify reconsideration.

Young Brothers filed a notice of appeal on December 29, 2010. On January 21, 2011, Young Brothers herein filed an emergency motion to stay the Interim Decision. On March 14, 2011, this court entered an order denying Young Brothers's motion to stay.

II. POINTS OF ERROR ON APPEAL

Young Brothers raises the following points of error:

(1) The PUC exceeded its statutory authority under the Hawaii Water Carrier Act (HRS Chapter 271G), specifically HRS §§ 271G-10 and 271G-12, by granting Pasha authority to operate until December 31, 2013 as an intra-state water carrier;

(2) The PUC failed to require Pasha to meet its burden of proof, and Pasha failed to meet its burden, to demonstrate that its proposed intra-state water carrier service is or will be required by the present or future public convenience and necessity pursuant to HRS § 271G-10, and the PUC improperly shifted the burden of proof to Young Brothers and the Consumer Advocate to show harm from Pasha's service;

(3) The Interim Decision erroneously replaced legislative policy and the statutory standard under HRS § 271G-10 with the PUC's own erroneous findings, standards, and policies;

(4) The PUC, in failing to apply the requirements of HRS § 271G-10, ignored the public interest, and misapplied and violated HRS § 271G-2;

(5) The Interim Decision was based upon out-of-context information from Young Brothers's 2008 rate case and, therefore, the PUC erroneously interpreted Pasha's impact on Young Brothers; and

(6) The PUC abused its discretion in denying Young Brothers's Motion to Compel.

The Consumer Advocate also contends that the PUC erred in its determination that Pasha met its burden of proof.

III. <u>APPLICABLE STANDARD OF REVIEW</u>

The standards applicable to the review of the PUC's rulings are well-defined:

> The applicable standard of review is established by HRS § 91-14(g) (1993), which provides:
>
>> (g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>>
>> (1) In violation of constitutional or statutory provisions; or
>>
>> (2) In excess of the statutory authority or jurisdiction of the agency; or
>>
>> (3) Made upon unlawful procedure; or
>>
>> (4) Affected by other error of law; or
>>
>> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>>
>> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
>
> [U]nder HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects are reviewable under subsection (3); findings of fact is reviewable under subsection (5); and an agency's exercise of its discretion under subsection (6). . . . .
>
>> Accordingly, a reviewing court will reverse an agency's findings of fact if it concludes that such a finding is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. HRS § 91-14(g)(5). On the other hand, the agency's conclusions of law are freely reviewable.
>> . . . .
>>> ...In order to preserve the function of the administrative agencies in discharging their delegated duties and the function of this court in reviewing agency determinations, a presumption of validity is accorded to decisions of administrative bodies acting within their sphere of expertise and one seeking to upset the order bears the heavy burden of making a

> convincing showing that it is invalid because it
> is unjust and unreasonable in its consequences.
> An agency's findings, if supported by reliable,
> probative and substantial evidence, will be
> upheld.
>
> . . . .
>
> Additionally, courts decline to consider
> the weight of the evidence to ascertain whether
> it weighs in favor of the administrative
> findings, or to review the agency's findings of
> fact by passing upon the credibility of
> witnesses or conflicts in testimony, especially
> the findings of an expert agency dealing with a
> specialized field.

In re Gray Line Hawaiʻi, Ltd., 93 Hawaiʻi 45, 52-53, 995 P.2d 776, 783-84 (2000) (quotations marks and citations omitted).

> In summary, when reviewing a determination of an
> administrative agency, we first decide whether the legislature
> granted the agency discretion to make the determination being
> reviewed. If the legislature has granted the agency discretion
> over a particular matter, then we review the agency's action
> pursuant to the deferential abuse of discretion standard (bearing
> in mind the legislature determines the boundaries of that
> discretion). If the legislature has not granted the agency
> discretion over a particular matter, then the agency's conclusions
> are subject to de novo review.

Paul's Elec. Serv., Inc. v. Befitel, 104 Hawaiʻi 412, 419-20, 91 P.3d 494, 501-02 (2004).

An appellate court's review of the PUC's decision to grant an application for a Certificate is limited to a determination of

> whether the [PUC] has observed the requirements of the law
> in the conduct of their proceedings and additionally,
> whether the conclusions as to public convenience and
> necessity have a rational basis in the facts found, which
> must be supported by substantial evidence on the record
> considered as a whole.

Application of Charley's Tour & Transp., Inc., 55 Haw. 463, 466, 522 P.2d 1272, 1275 (1974) (citation omitted). The PUC's determination that services are required by present and future public convenience and necessity is also reviewed for an abuse of discretion. In re Robert's Tours & Transp., Inc., 104 Hawaiʻi 98, 108, 85 P.3d 623, 633 (2004).

IV.   DISCUSSION

    A.   Applicable Law

        Since 1974, HRS Chapter 271G, the Hawaiʻi Water Carrier Act (**HWCA**), has governed intrastate water carrier services in Hawaiʻi.   Since its enactment, HRS § 271G-2 (2007) has provided:

> **§ 271G-2 Declaration of policy.**  The legislature of this State recognizes and declares that the transportation of persons and of property, for commercial purposes, by water within the State or between points within the State, constitutes a business affected with the public interest. It is intended by this chapter to provide for fair and impartial regulation of such transportation, so administered as to recognize and preserve the inherent advantages of such transportation, in the interest of preserving for the public the full benefit and use of the waterways consistent with the public safety and the needs of commerce: to promote safe, adequate, economical, and efficient service among carriers, to encourage the establishment and maintenance of reasonable rates and charges for transportation and related accessorial service, without unjust discrimination, undue preference or advantage, or unfair or destructive competitive practices, all to the end of developing, coordinating, and preserving a sound transportation system by water.  This chapter shall be administered and enforced with a view to carrying out the above declaration of policy.

        HRS § 271G-3 (2007) provides that the HWCA shall be administered by the PUC.   HRS § 271G-10 governs when the PUC shall issue a Certificate to an applicant seeking to operate as a water carrier within the State.   More specifically, at the time of Pasha's application, and at the time of the PUC's Interim Decision, HRS § 271G-10(c) (2007) provided as follows:

> (c) A certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to this chapter and the requirements, rules, and regulations of the commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise the application shall be denied.

        During the pendency of this appeal, the 2011 Hawaiʻi Legislature passed Senate Bill 98, legislation relating to water carriers that, while self-described as clarifying the legislative intent underlying the existing requirements for issuing a

Certificate, substantially and substantively amended the procedures and requirements for the issuance of a Certificate to a water carrier applicant. Act 213 was signed into law with a specified effective date of July 1, 2011. In addition to establishing new notice and public hearing requirements prior to the issuance of a certificate, Act 213 barred interim orders for Certificates, such as the one at issue herein, and establishes new criteria for a water carrier Certificate. S.B. 98, S.D. 2, H.D. 1, C.D. 1, 26th Leg., Reg. Sess. (2011). The amended statute now provides, in relevant part:

> (e) The commission shall not make a finding of public convenience and necessity or issue an authorization, whether interim, permanent, or otherwise, to operate as a water carrier without the following specific findings supported by evidence in the record:
>
> (1) Existing water carrier services are inadequate to presently service the public or meet demonstrated and quantifiable future demands for service;
>
> (2) The proposed service is designed for and necessary to meet demonstrated and quantifiable unmet public needs for present water carrier service or demonstrated and quantifiable future demands for service;
>
> (3) The proposed service will provide demonstrated and quantifiable benefits to the general public, business community, and the economy of all islands that are entitled to notice under section 271G-23.5, including demonstrated and quantifiable benefits with respect to reliability, affordability, and security of the service line;
>
> (4) The specific, identified benefits of the proposed service outweigh its detrimental impact to the public's interest in maintaining services, including:
>
> (A) Economies of scale and scope of current water carriers;
> (B) Future capital costs of existing water carriers;
> (C) Ability of existing water carriers to make necessary capital and resource investments;
> (D) The financial health, stability, and revenue stream of existing water carriers; and

> (E)     The likelihood that existing levels of
>         service will be maintained after the
>         enactment of the proposed service; and
>
> (5)    If the commission's finding of public
>        convenience and necessity differs from the
>        recommendation of the consumer advocate,
>        specific findings to address each ground for
>        objection articulated by the consumer advocate.
>
> The commission shall not make a finding of public
> convenience and necessity nor issue a certificate if the
> evidence in the record indicates that the issuance of the
> certificate would diminish an existing water carrier's
> ability to realize its allowed rate of return or if the
> certificate would allow an applicant to serve only
> high-margin or high-profit ports or lines of service that
> are currently served by an existing carrier.

HRS § 271G-10(e) (Supp. 2012); see also HRS § 271G-10(g) (newly prohibiting interim approval of a Certificate except in response to a state-declared emergency).

Given the scope of the changes to the HWCA, we must determine which version of the statute governs this appeal. HRS § 1-3 (1955) provides that "[n]o law has any retrospective operation, unless otherwise expressed or obviously intended." Id.; see also Wong v. Takeuchi, 88 Hawai'i 46, 51, 961 P.2d 611, 616 (1998) (citing State of Hawai'i Org. of Police Officers v. Soc'y of Prof'l Journalists, 83 Hawai'i 378, 389, 927 P.2d 386, 397 (1996)). Where an amendment does not provide for retroactive application, retroactive construction generally is not applied "if such a construction will impair existing rights, create new obligations or impose additional duties with respect to past transactions." Clark v. Cassidy, 64 Haw. 74, 77 n.6, 636 P.2d 1344, 1346 n.6 (1981) cf. Gov't Emp. Ins. Co. v. Hyman, 90 Hawai'i 1, 5, 975 P.2d 211, 215 (1999) ("a statute providing remedies or procedures that do not affect existing rights, but merely alter the means of enforcing or giving effect to such rights, may apply to pending claims--even those arising before the effective date of the statute") (citing Clark, 64 Haw. at 77, 636 P.2d at 1347) (internal citations omitted).

We reject Young Brothers's argument that the Legislature's description of Act 213 as a clarification of the pre-existing requirements for the issuance of a Certificate is determinative of whether the Legislature intended retroactive application of its new requirements. See, e.g., State v. Jordan, 72 Haw. 597, 600, 825 P.2d 1065, 1067 (1992) (noting that the use of the "clarification" normally would seem to indicate an intent that statute was intended to be applied retroactively, but declining to apply the statute retroactively because no express statement of retroactivity, later effective date, and substantive effect on retroactive application). Here, Act 213 is expressly made effective as of July 11, 2013 and not retroactively. It is obvious that the Legislature intended that interim Certificates not be granted in the future, for example, but not that the Legislature intended the PUC to rescind existing interim Certificates. It is also apparent that the Legislature intended to make it more difficult for new water carriers to enter the market, adding stringent new statutory requirements and burdens that did not exist in HRS § 271G at the time that Pasha's Certificate was issued, but not that it was intended that these new criteria be applied to previously-issued Certificates. On balance, we cannot say that the Legislature either expressly or obviously intended that Act 213 have retroactive application. See also Wong v. Takeuchi, 88 Hawai'i 46, 50-51, 961 P.2d 611, 615-16 (1998) (rejecting retroactive application of a statute because it would impose an additional burden on a party as a result of a past transaction and the statute did not "expressly or obviously manifest an intent to be applied retroactively"). Indeed, the substantive rights of the litigants in this appeal are altered by the amendments, not merely "collateral matters of the enforcement and administration of these rights," as must be found in order to retroactively apply the amended statute in the absence of express legislative intent for retroactive

construction. See Gov't Employees Ins. Co., 90 Hawai'i at 7, 975 P.2d at 217. Accordingly, this appeal is governed by HRS § 271G-10 (2007) and not the statute as amended.[3]

B.   The Interim Decision

Young Brothers challenges the Interim Decision on various grounds. The Consumer Advocate, as well as Young Brothers, argues that Pasha did not meet its burden of proof.

Young Brothers first argues that the PUC exceeded its statutory authority when it granted Pasha the right to operate as an intra-state water carrier until December 31, 2013. We disagree. HRS § 271G-10(c) expressly grants the PUC the mandate to authorize "the whole or any part of the operations covered by the application" and states that "the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity[.]" Id. (emphasis added). There is nothing in the statute that explicitly or implicitly prohibits the PUC from allowing water carrier operations on an interim basis. Other sections of HRS Chapter 271G similarly grant the PUC broad duties and powers to regulate, direct inquiries, investigate, require accounts, records, and reports, and/or suspend, change, limit, terminate, or revoke a Certificate. See, e.g., HRS §§ 271G-7, 271G-8, 271G-15, 271G-18. The PUC's power under HRS § 271G-12 to grant "temporary authority" for water carrier services, in order to direct "an immediate and urgent need" does not expressly or implicitly limit the PUC's authority under HRS § 271G-10(c) and does not apply to situations where a formal Certificate application proceeding has already been initiated. See generally Application of Kauai Elec. Div. of Citizens Utilities Co., 60 Haw. 166, 180, 590 P.2d 524, 535 (1978) (holding that the PUC's

---

[3]   Therefore, unless otherwise specifically noted, all further references to HRS Chapter 271G refer to statute in effect at the time of the Interim Decision.

"authority to grant interim rate increases conditioned on a refund provision is necessarily implied from the express authority to regulate rates and supervise public utilities operating within the State, and is to be implied from the express authority granted the Commission under HRS § 269-16").

In addition, Young Brothers and the Consumer Advocate argue that the PUC erred in issuing the Interim Decision because Pasha failed to provide sufficient evidence to meet its burden of proof on the element of public necessity, as required by HRS § 271G-10. HRS Chapter 271G does not define "public convenience and necessity." However, the Hawai'i Supreme Court has explained:

> While it is well settled that the [PUC] should consider the public interest in maintaining the health and stability of existing carriers and the adequacy of existing services, these are but two of the elements to be considered in determining public convenience and necessity.
>
> The burden is on the applicant to show that the proposed operation not only will be of beneficial value to the community, but also is a necessity. Generally, the applicant may meet this burden by demonstrating either a lack of adequate existing facilities to presently serve the public, or insufficient facilities to meet anticipated future demands for service. The [PUC] may authorize the certificate even though other existing carriers might be fit, willing, and able to furnish successfully the proposed service.

Charley's Tour, 55 Haw. at 469, 522 P.2d at 1277 (citations omitted).

In the Interim Decision, the PUC found:

> Pasha's proposed intrastate operations would foster competition in the intrastate shipping industry, provide consumers with a choice of intrastate water carriers, and minimize any potential harm or inconvenience to the public if existing services were disrupted. Without a second intrastate water carrier of property, consumers will continue to be at the mercy of a single water carrier of property. [Young Brothers] will also have little incentive to improve services and increase efficiency in its operations. Thus, from the commission's perspective there appears to be a "public need" for a second carrier.

The PUC stated that it considered the entire record in determining that Pasha's services were required by the present

and future public convenience and necessity. The PUC cited representations made by the Consumer Advocate as well as Pasha regarding the services Pasha would provide, including services "not currently available," to support the PUC's conclusions that Pasha's proposed intrastate operations met this statutory requirement.

The appellants challenge various findings by the PUC, including: "that entry of a second water carrier may be of 'beneficial value' to the community, and that competition may pressure existing firms to lower prices or improve quality"; that Pasha could serve as a back-up in an emergency; that continued reliance on only one intrastate water carrier of property places the State in an untenable position; and that Pasha will provide customers with "roll-on/roll-off service" and offer capacity not currently available. They also dispute the following:

> The commission recognizes that the entry of a second water carrier of property may be of beneficial value to the community. Competition among firms, or the potential of such competition, can benefit the public by creating pressure for the existing firms to minimize their costs and lower their prices, improve the quality of their existing products, develop new technology, and increase service offerings. See In re Robert's Tours & Transp., Inc., 104 Hawai'i 98, 109, 85 P.3d 623, 634 (Sup. Ct. 2004) (affirming the PUC's decision to grant a motor carrier Certificate where "it would encourage competition and constrain otherwise monopolistic operations.").

Based on the record before us, it appears that the PUC had substantial evidence on which to base its findings. In Pasha's application for a Certificate, Pasha stated:

> It has already been demonstrated that the entry of the M/V Jean Anne into the interstate transportation of cargoes by water between the mainland and Hawaii created competition which has benefitted the trade. [Pasha] believes that its proposed inter-island water transportation service will bring competition into that market which will cause similar economic and service benefits [sic] this inter-island water carrier service.

Pasha attached to its application numerous letters from business people, members of the military, and public figures in support of its assertion that its entry into the shipping trade would benefit the public by fostering competition.

In the Interim Decision, the PUC found:

> [A]llowing Pasha to operate would provide the State with an alternative option in the event [Young Brothers's] service is disrupted or an emergency situation that requires the availability of a second water carrier of property should occur.  As noted by the Consumer Advocate, the options for shipping cargo inter-island are basically limited to the airline industry, [Young Brothers], and freight forwarders (which in turn rely on the airlines and [Young Brothers]). For customers shipping certain types of cargo, however, [Young Brothers's] barge service is the only option that is currently available.

Young Brothers contends that, to the contrary, the record demonstrates that (1) it serves as its own back-up, with numerous tugs and barges, (2) Pasha only proposes to sail twice a month, one-way, among Honolulu, Kahului, and Hilo, in contrast to Young Brothers's numerous sailings among all islands several times each week, and (3) Pasha is unable to carry refrigerated cargo and livestock, which would likely be the bulk of products that need to be shipped in an emergency.  Nevertheless, we will not reweigh the evidence presented to the PUC, and we conclude that the PUC's conclusions have a rational basis in the facts found, which are supported by substantial evidence in the record.

In the Interim Decision, the PUC found that "[g]iven the critical importance of the inter-island shipping industry in the movement of produce, livestock, and consumer goods within the State, the commission believes that the continued reliance on only one intrastate water carrier of property places the State in an untenable position."  Young Brothers disagrees with the PUC's determination.  We cannot conclude, however, that the PUC abused its discretion in its consideration of public policy concerns, as well as the evidence before it, in its determination that Pasha's services were required, at least on an interim basis, by present and future public convenience and necessity.

In the Interim Decision, the PUC found:

> In this case, Pasha's proposed service will provide customers with RO/RO [roll-on/roll-off] water transportation service.  In addition, Pasha claims that the "M/V Jean Anne will offer capacity not currently available by providing a vessel with adjustable, fully enclosed cargo decks, a stern ramp capable of receiving loads up to 100 metric tons, and increased capacity for oversize cargos."  While Pasha's sailing schedule may be less frequent, its proposed service would benefit shippers who need to transport oversized cargos, such as heavy construction equipment, tracked vehicles, buses, and automotive/recreational vehicles, in a fully enclosed cargo space.

Young Brothers argues that the finding that Pasha will offer roll-on/roll-off service and offer capacity currently not available is incorrect and not evidence of a need for Pasha's services or capacity, because Young Brothers has already invested in, and currently owns, a covered roll-on/roll-off vessel and other barges capable of carrying oversized cargoes.  However, the PUC did not find that roll-on/roll-off service was currently unavailable; rather, it found that Pasha would offer that service.  The PUC's finding that Pasha would offer capacity currently not available is clearly supported in the record.

Young Brothers argues that the PUC erroneously concluded that Pasha's services satisfy the public convenience and necessity requirement because they may foster competition.  However, the PUC's conclusion has a rational basis in the facts found and appears to be supported by substantial evidence, based on the record before us.  The PUC relied on, *inter alia*, the Consumer Advocate's observation that "Pasha's proposed service offers the public a choice of intrastate water carrier service and encourages competition among carriers.  This, in turn, could result in higher quality customer service, improved service offerings, and possibly more jobs."  The PUC also relied on the important benefit of having an alternative option in the event that Young Brothers's service was disrupted or an emergency situation required the availability of a second carrier.

In addition, contrary to Young Brothers's argument, there appears to be no evidence that, by approving Pasha's application for a Certificate to the extent authorized therein, the PUC has decided to deregulate the water carrier industry. Nor is there evidence that, as a result of the Interim Decision, the PUC will fail to regulate the operations of both Young Brothers and Pasha, in accordance with HRS Chapter 271G. Clearly, future regulation and any new application(s) for a Certificate will be governed by the 2011 revisions to the HWCA.

We also reject Young Brothers's argument that the PUC erroneously concluded that Pasha was "fit . . . to perform the service proposed" pursuant to HRS § 271G-10(c) because Pasha failed to carry its burden of proof with respect to the fitness requirement. The record includes, inter alia, the Consumer Advocate's statement that Pasha was "fit, willing, and able to perform its proposed service" because Pasha "currently provides very similar interstate water carrier service to the same ports as its proposed intrastate service, and appears to have sufficient financial resources to sustain its operations for the near future."

We also reject the arguments made by Young Brothers and the Consumer Advocate that the PUC improperly shifted the burden of proof from Pasha to them regarding harm to Young Brothers resulting from the issuance of a Certificate to Pasha. Pasha, as the applicant for a Certificate, bears the burden of establishing that the "proposed operation not only will be of beneficial value to the community, but also is a necessity." Charley's Tour, 55 Haw. at 469, 522 P.2d at 1277. However, if alleged, competing carriers shall be "permitted to testify on the adverse effect to their operations of the proposed services." Id. at 469, 522 P.2d at 1277.,

> [i]t is a general doctrine of evidence that where the facts with regard to an issue lie peculiarly in the knowledge of one party and where it would be particularly onerous to force the other party to bear the proof of the negative, the

> burden of proving the issue lies with the knowledgeable
> party.

Trans-Am. Van Serv., Inc. v. U.S., 421 F. Supp. 308, 331 (N.D.
Tex. 1976) (citing McCormick on Evidence, § 337 (2d ed. 1972)).
Because Young Brothers is proffering the argument that Pasha's
operation would be harmful to its business, and is in the best
position to present credible evidence on this point, Young
Brothers bears the burden of bringing forth evidence to support
its argument. By requiring Young Brothers to support its
assertion of harm as a result of Pasha's services, the PUC did
not erroneously shift the ultimate burden of proving the elements
required for the Certificate approval under HRS § 271G-10 from
Pasha to Young Brothers.

Finally, as we have concluded that the PUC did not
clearly err in its factual findings, and did not abuse the
discretion granted to it under HRS chapters 269 and 271G, we
reject the argument that the PUC erroneously replaced existing
legislative policy and statutory standards with its own standards
for entry into the regulated water carrier market.

We also reject Young Brothers's contention that the PUC
misinterpreted information and opinions submitted by Young
Brothers in a prior rate-setting case. The PUC considered and
weighed the evidence and arguments made by Young Brothers on this
point and retained the authority to revoke Pasha's Certificate
during the interim period of operation approved in the
Certificate. We cannot conclude that the PUC clearly erred in
its weighing of this evidence or abused its discretion in its
method of addressing Young Brothers's concerns.

Finally, as we have concluded that the PUC did not
clearly err in its factual findings, and did not abuse the
discretion granted to it under HRS chapters 269 and 271G, we
reject the argument that the PUC erroneously replaced existing
legislative policy and statutory standards with its own standards
for entry into the regulated water carrier market.

   C.   Young Brothers's Motion to Compel

As acknowledged by Young Brothers, the PUC's decision
to deny Young Brothers's motion to compel is reviewed for an
abuse of discretion. "While PUC decisions are not presumptively
valid, . . . an agency's discretionary determinations are

entitled to deference, and an appellant has a high burden to surmount that deference." <u>In re Molokai Pub. Utilities, Inc.</u>, 127 Hawai'i 234, 236, 277 P.3d 328, 330 (App. 2012) (citations and brackets omitted).

On December 4, 2009, Young Brothers filed a motion to compel Pasha to provide responses to certain information requests previously issued by Young Brothers to Pasha. Young Brothers had previously posed three separate sets of information requests to Pasha on September 4, 2009, September 25, 2009, and on September 30, 2009. Pasha responded to each of them. However, in accordance with a protective order issued by the PUC, Pasha did not answer certain questions that fell under the classification of the confidential, protected information. As explained by PUC in the protective order, any information in good faith believed to "contain trade secrets or other confidential research, development, commercial, financial, vendor, or bid information, including but not limited to cost support studies" shall be kept confidential from "non-qualified person[s]." Because Young Brothers was found not to be a qualified person, Young Brothers was not privy to this information. Specifically, the PUC stated that Young Brothers was permitted to intervene for the sole purpose of providing "evidence regarding the state of the inter-island shipping market to assist the commission in developing a sound record in this proceeding." In the PUC's Order Granting the Intervention, the PUC "cautioned [Young Brothers] that its involvement as an intervenor in this docket [is] limited to the issues raised in this docket."

Young Brothers argued that the information it sought should not be designated as confidential and that, even if the information was found to be confidential, it should nevertheless be disclosed to Young Brothers under a protective order, because Young Brothers has a substantial need for the information in order to assist the PUC in examining the state of the inter-

island shipping market and the potential impacts of Pasha's proposed service overall.

In its Order Denying Young Brothers's Motion to Compel, the PUC explained that the information requested by Young Brothers is "not directly relevant to the specific issues with which Young Brothers, as intervenor, is concerned." Young Brothers attempted to request types of cargo handling equipment and labor force that Pasha proposes to use to load and unload its cargo, as well as the frequency and volume of cargo loaded and unloaded at Grays Harbor and whether such service has ever affected Pasha's inter-state service between San Diego and Hawai'i. The PUC found, however, that the information requested was not relevant to Young Brothers's role as an intervenor in determining the state of the inter-island shipping market. Finally, the PUC found that Young Brothers was fully capable of assisting the PUC without the requested information, as shown by Young Brothers's submission of its SOP and supplemental discovery responses addressing the issue of potential impacts.

The reasons set forth by the PUC in denying Young Brothers's Motion to Compel appear to be just and reasonable, and not arbitrary or capricious. Young Brothers's position as intervenor was specifically limited to assisting the PUC in developing information regarding the inter-island shipping market, which rested largely on evidence related to Young Brothers's own intrastate operations. Furthermore, as the PUC noted, there are important policy considerations for precluding a party from gaining access to its competitor's confidential business information by taking advantage of its position as an intervenor in the case before the PUC. Therefore, the PUC did not abuse its discretion in denying Young Brothers's Motion to Compel.

V.     CONCLUSION

For these reasons, the PUC's September 20, 2010 Interim Decision is affirmed.

DATED: Honolulu, Hawai'i, October 10, 2013.

On the briefs:

Craig I. Nakanishi
Tracy G. Chinen
Erin H. Yoda
(RUSH MOORE LLP)
for Appellant/Cross-Appellee
YOUNG BROTHERS, LIMITED

Jon S. Itomura
Lane H. Tsuchiyama
for Cross-Appellant
DIVISION OF CONSUMER ADVOCACY
DEPARTMENT OF COMMERCE AND
 CONSUMER AFFAIRS

Bonita Y.M. Chang
for Appellee/Cross-Appellee
STATE OF HAWAI'I, PUBLIC
UTILITIES COMMISSION

Clifford K. Higa
Bruce Nakamura
Anthony F. Suetsugu
(KOBAYASHI SUGITA & GODA)
for Appellee/Cross-Appellee
PASHA HAWAII TRANSPORT LINES LLC

Presiding Judge

Associate Judge

Associate Judge